JESSE D. CRELL et al., Respondents, v ANDREW P. O'ROURKE et al., Appellants.

Second Department, July 15, 1982

APPEARANCES OF COUNSEL

*Lovett & Gould* (*Jonathan Lovett* of counsel), for appellants.

*August C. Nimphius, Jr.,* for respondents.

OPINION OF THE COURT

*Per Curiam.*

Article 5-A of the County Law (§ 250 *et seq.*) details the manner in which a county board of supervisors or legislators may establish a refuse disposal district. After preliminary steps are taken and a public hearing held, and after finding that certain statutory guidelines are satisfied, the board may adopt a resolution approving the establishment of the district, subject to a permissive referendum (County Law, § 256). Thereafter, upon approval of the resolution by the electorate at the referendum, if held, application must

be made to the State Department of Audit and Control for permission to establish the district (County Law, § 258). If the State Comptroller grants permission, the board may adopt an order establishing the district, which order shall be recorded in the office of the County Clerk and filed with the State Department of Audit and Control (County Law, §§ 258, 259). Section 260 provides that any interested party aggrieved by the final determination or order establishing the district may make application, within 30 days of the recording of the order, for review "of any and all of the final determinations made by the board of supervisors in connection with the proceeding establishing the district * * * in the manner provided in article seventy-eight of the [CPLR]."

In 1973 the Westchester County Board of Legislators (the board) authorized the preparation of plans for the development of a solid waste disposal facility. On November 9, 1981, after a public hearing upon the proposed refuse disposal facility and district, the board passed Resolution 227-1981 approving establishment of the district. A timely petition to compel the holding of a permissive referendum was thereafter filed with the clerk of the board.

By Resolution 248-1981, the board directed that a proposition as to the proposed district be submitted to the electors, and that the proposition and an abstract be made available to the electors.

Thereafter the board adopted Resolution 1-1982, which modified one paragraph of Resolution 227-1981 pertaining to the county's arrangements with the City of Peekskill, the location of the proposed facility. Resolution 20-1982 was then adopted, providing for the referendum to be held on March 30, 1982, setting forth the proposition to be voted upon, and referring back to and incorporating Resolution 227-1981 "[a]s clarified by Resolution No. 1-1982." The abstract accompanying Resolution 20-1982 contained the modification recited in Resolution 1-1982. The procedures for publication provided for in Resolution 248-1981 were repromulgated in Resolution 20-1982.

The referendum to establish the proposed district was approved by the electorate on March 30, 1982. After receiving the State Comptroller's authorization, an order estab-

lishing the district was recorded on May 4, 1982. By order to show cause dated May 10, 1982, petitioners, residents of Westchester County, commenced the instant proceeding seeking to set aside the referendum (and, in effect, the subsequent order) on the grounds that the ballot submitted to the electors was allegedly improperly drawn, that Resolution 227-1981 was never put before the electors, and that certain procedural defects existed.

Special Term accepted petitioners' argument that the inclusion of the amendment as to Peekskill "amounted to a new and a different resolution than that which had formed the basis for the petition which acquired [*sic*] the referendum" and held that the amendment had the effect of repealing Resolution 227-1981 and creating a new resolution. However, since the new resolution was never submitted for adoption subject to a permissive referendum, the court concluded that "[t]here was nothing on which a referendum vote could have been held", that the referendum was a nullity, and that, in any case, the form of the proposition voted on did not comply with the requirements of section 102 of the County Law and was therefore fatally defective.

The conclusion that there was no valid resolution before the electorate is apparently predicated on Special Term's views that the wishes of the voters who petitioned for the referendum should have been honored and that the electorate, in effect, was disenfranchized since it was entitled to vote on the precise resolution that was petitioned for. In general, we agree that a resolution presented to the voters at a referendum should be the one for which a petition was signed. However, the resolution submitted herein contained only an insubstantial amendment which was publicized according to law prior to the election, and thus we conclude that the voters were not disenfranchised. A contrary result would in fact disenfranchise the signers of the petition and those who voted at the referendum. According to petitioners, to effect a change in the original resolution, the board should have repealed it and adopted a new one, incorporating the change and allowing for a permissive referendum. However, if there were no timely petition for a referendum on that second resolution, with sufficient sig-

natures, that resolution could become law without a vote. The goal of the signatories to the initial petition, to submit the matter to the electorate, would be frustrated. Such an approach would lend itself to potential abuse on the part of an unscrupulous board which wished to avoid a referendum.

We thus conclude that Resolution 227-1981, as amended by Resolution 1-1982, was properly before the voters at the referendum. We need not reach the question of the sufficiency and propriety of the form of the proposition on the ballot because petitioners' claim pertaining thereto is time barred. We note that a prior proceeding by other petitioners represented by the same counsel challenging the form of the proposition had been dismissed as time barred (*Price v Hayduk,* Supreme Ct, Westchester County, March 29, 1982 GURAHIAN, J.). The Election Law governs the submission of a proposition to the voters (County Law, §§ 257, 102, subd 2). According to the Election Law, any proceeding to challenge the form of a proposition must be instituted within 14 days after the last day to certify the wording of the submission (Election Law, § 16-104, subds 2, 3). In this case such a challenge should have been brought by March 15 (see Election Law, § 4-108, subd 1, par b). The 30-day limit established in section 260 of the County Law has no application to a challenge to election procedures (see *Matter of Van Lengen v Balabanian,* 50 Misc 2d 652, affd 26 AD2d 622, affd 17 NY2d 920; *Matter of Hogan v Callahan,* 49 AD2d 714; see, also, *Matter of Buechel v Bosco,* 9 AD2d 916).

Finally, we find that there was substantial compliance with the procedural requirements set forth in the County Law. This court will not thwart the wishes of the voters and discourage the efforts of public officials by declaring some minor step omitted in the statutory procedure fatal, or by overstressing the importance of some technical defect (see *Matter of Noyes v Slocum,* 21 AD2d 802).

MOLLEN, P. J., TITONE, MANGANO, BROWN and NIEHOFF, JJ., concur.

In a proceeding pursuant to section 260 of the County Law and CPLR article 78, *inter alia,* to set aside a special referendum election held on March 30, 1982 relating to the

establishment of a refuse disposal district, the appeal is from a judgment of the Supreme Court, Westchester County, dated July 6, 1982, which granted the petition. (We deem the petition to include a request to review the order of the board of legislators, filed May 4, 1982, ordering the establishment of the district.)

Judgment reversed, on the law, without costs or disbursements, and proceeding dismissed on the merits.